**AFFIRMED IN PART; REVERSED IN PART; REMANDED; and Opinion Filed November 27, 2023**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01263-CV**

**XS HEAVY HAUL, INC. AND JIM AND NANCY ELISE TELFORD,**
**Appellants**
**V.**
**COMMERCIAL CREDIT GROUP, INC., TEXHOMA COMMERCIAL TITLES, LLC, AND ARTHUR CASTANON, Appellees**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-05562-2020**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Carlyle, and Justice Kennedy
Opinion by Justice Carlyle

XS Heavy Haul, Inc., Jim Telford, and Nancy Elise Telford (collectively, the Heavy Haul parties) appeal from a summary judgment granted in favor of Commercial Credit Group, Inc. (CCG). CCG cross-appeals the trial court's judgment with respect to its attorney's fees. We affirm the grant of summary judgment, reverse the fee award, and remand to the trial court for further proceedings consistent with this memorandum opinion. *See* TEX. R. APP. P. 47.4.

Heavy Haul is a small company owned by the Telfords that transports heavy equipment using specialized trailers. This dispute arises out of a series of promissory notes Heavy Haul executed in favor of CCG, which the Telfords personally guaranteed. Heavy Haul executed the first note in 2018 when it purchased a trailer from CCG based on CCG's representation that the trailer was a 2010 "Super 13" Cozad. Shortly after Heavy Haul began using the trailer, it suffered major structural damage.

While the trailer was under repair, Heavy Haul purchased additional equipment from CCG and executed a second promissory note. Heavy Haul then discovered both that the initial trailer it purchased from CCG was not a 2010 Cozad as represented and was not capable of heavy hauling. To make the trailer suitable for its business, Heavy Haul had to convert it to a dual-lane trailer at significant additional expense. Heavy Haul chose to finance the retrofit through CCG, executing a third promissory note that provided, among other things, that Heavy Haul "unconditionally authorize[d] and request[ed] that [CCG] disburse" $432,912.50 of the proceeds due [Heavy Haul]" to Jefe's Welding Co.—the business performing the retrofit.

The third promissory note, by which Heavy Haul also refinanced the first two promissory notes, contained a release provision stating that Heavy Haul "waive[d] any claim(s) whatsoever [that it] may have against [CCG]." Heavy Haul also

executed a standalone release agreement in connection with the third note that specifically released any claims it had against CCG.

Jefe's Welding did not finish the retrofit according to schedule, and Heavy Haul feared it would be unable to make its required monthly payments without the trailer. Heavy Haul thus negotiated an amendment to the third note extending its payment schedule. Under the terms of that extension amendment, Heavy Haul agreed that the balance owed under the third note was $2,000,721.00. Moreover, "[a]s a material inducement, and in consideration, for CCGs agreement to" the extension amendment, Heavy Haul "acknowledge[ed], warrant[ed], and agree[d]" that its "indebtedness" under the third note was "a valid and enforceable obligation" that was "due and payable in accordance with its terms without any defense, offset or counterclaim whatsoever." Heavy Haul further agreed to pay CCG "in accordance with the payment schedule set forth" in the amendment and again agreed to release any claims it had against CCG.

The same day the parties executed the amendment extending the third note's payment schedule, Heavy Haul executed a fourth note secured by additional equipment Heavy Haul acquired with the loan proceeds. The fourth note contained a provision stating that "[f]or value received," Heavy Haul "irrevocably and unconditionally promises to pay" CCG $99,504.00, which Heavy Haul acknowledged was "absolutely due and owing and [is] not subject to any claim, counterclaim, or set off of any kind."

Within a few months, Heavy Haul stopped making its required payments under the notes and filed this lawsuit against CCG alleging claims for fraud, negligent misrepresentation, conversion, civil conspiracy, and breach of contract—all based on CCG's conduct in relation to the trailer it sold that was not a 2010 Cozad as represented. CCG countersued for breach of contract, asserted third-party claims against the Telfords, and moved to dismiss Heavy Haul's claims as barred by release. After the trial court denied CCG's rule 91a motion, we granted mandamus relief, concluding "the pleadings include facts that incontrovertibly constitute a [release] defense to Heavy Haul's claims." *See In re Commercial Credit Grp. Inc.*, No. 05-21-00115, 2021 WL 1884657, at *5 (Tex. App.—Dallas May 11, 2021, pet. denied) (mem. op.).

CCG then moved for summary judgment on its own claims against the Heavy Haul parties. The Heavy Haul parties did not dispute failing to pay the notes as required. Instead, as relevant to their arguments on appeal, the Heavy Haul parties responded that a fact issue exists as to whether CCG fully performed under the third note, asserting that CCG failed to pay $150,000 of the loan proceeds to Jefe's Welding as requested. To support that assertion, the Heavy Haul parties relied on paragraphs 14 and 16 of Nancy Telford's affidavit, which they attached as an exhibit to their response.

CCG objected to the Heavy Haul parties' evidence, including Ms. Telford's affidavit. As relevant to the issues on appeal, the trial court sustained CCG's

objections and struck the relevant portions of paragraphs 14 and 16 from the summary judgment record. The trial court then granted CCG's motion for summary judgment and later held a hearing on CCG's request for attorney's fees, at which CCG provided supporting testimony and documentation. Following the hearing, CCG submitted a supplemental affidavit from counsel concerning conditional appellate fees—evidence which CCG contended it was unable to present at the hearing due to the trial court's time restraints.[1]

The final judgment awards CCG $1,715,402.46 in damages and $33,429.55 in attorney's fees—less than 11% of the total attorney's fees requested. In addition, the trial court ordered "that CCG is not entitled to recover any additional sums as conditional attorneys' fees awards."

The Heavy Haul parties appeal to the extent the trial court granted CCG's motion for summary judgment, and CCG cross-appeals the trial court's fee award.

SUMMARY JUDGMENT WAS PROPER

We review a summary judgment de novo, taking as true all evidence favoring the nonmovant while indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *First U. Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). "A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is

---

[1] The trial court permitted ten minutes per side to present evidence on attorney's fees.

entitled to judgment as a matter of law." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing Tex. R. Civ. P. 166(a)(c)). "If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment." *Id.* "A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *First U. Pentecostal Church of Beaumont*, 514 S.W.3d at 220 (Tex. 2017) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

To prove its claim for breach of contract, CCG had to establish: (1) a valid contract; (2) its performance or tendered performance; (3) the Heavy Haul parties' breach; and (4) damages resulting from that breach. *See Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*, 599 S.W.3d 618, 625 (Tex. App.—Dallas 2020, no pet.). For purposes of this appeal, the Heavy Haul parties do not dispute that CCG established elements one, three, and four. Instead, they argue that the trial court erred by granting summary judgment because CCG did not establish its own performance or tendered performance under the third and fourth notes.

According to the Heavy Haul parties, the summary judgment record does not establish that "CCG actually distributed $432,912.50 of the Third Note loan proceeds – or, indeed, any money at all – to Jefe's as explicitly required by the Third Note." Even if we assume the third note required CCG to distribute funds directly to

Jefe's,[2] CCG did not have to prove the distribution occurred to establish its claim against Heavy Haul.

CCG's petition alleged that it performed under the notes and that all conditions precedent to its right to recover had been performed or otherwise satisfied. Under civil procedure rule 54, CCG had no further obligation to prove performance of any condition precedent to its ability to recover under the notes—including performance of any specific contractual obligations—unless the Heavy Haul parties specifically denied such performance. *See* TEX. R. CIV. P. 54; *Sharifi v. Steen Automotive, LLC*, 370 S.W.3d 126, 146–47 (Tex. App.—Dallas 2012, no pet.) ("The record does not show these three 'conditions precedent' were specifically denied by Sharifi in his live pleading at the time of the summary judgment hearing. On this record, we cannot agree with Sharifi that Steen LLC had the burden to prove these alleged conditions were satisfied."); *Hill v. Thompson & Knight*, 756 S.W.2d 824, 825–26 (Tex. App.—Dallas 1988, no writ) (Hecht, J.) (rejecting argument that plaintiff suing on a promissory note could not obtain summary judgment without "establish[ing] that it has performed all conditions precedent to recovery on the note" because defendant's answer did not specifically deny such performance under rule 54). In their live pleadings on file at the time of the summary judgment hearing, the

---

[2] The third note does not "explicitly require[]" distribution to Jefe's; rather, the third note states that Heavy Haul "unconditionally and irrevocably authorize[d] and request[ed] that [CCG] disburse the proceeds due [Heavy Haul]" to Jefe's. Whether this provision required CCG to distribute the proceeds directly to Jefe's rather than Heavy Haul is an issue we need not decide.

Heavy Haul parties did not specifically deny any conditions precedent to CCG's right to recover under the notes.

The Heavy Haul parties nevertheless argue that, despite failing to specifically deny performance of any conditions precedent in their live pleadings, their summary judgment briefing was sufficient to shift the burden back to CCG to prove it had in fact distributed funds to Jefe's in accordance with the third note. *See Tabe v. Tex. Inpatient Consultants, LLLP*, 555 S.W.3d 382, 387 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (concluding defendant had the burden to specifically deny the performance or occurrence of a condition precedent "either in a responsive pleading or . . . response to [plaintiff's] summary-judgment motion"). Even if we assume without deciding that a specific denial under rule 54 can be raised for the first time in response to a motion for summary judgment, CCG did not have to prove it distributed the funds to Jefe's to establish its claim for breach of the third note as amended.

The amendment to the third note states that "[a]s a material inducement, and in consideration, for CCGs agreement to" extend Heavy Haul's payment terms, Heavy Haul "acknowledge[d], warrant[ed], and agree[d]" that it owed $2,000,721.00 under the third note, which "indebtedness" was "a valid and enforceable obligation . . .due and payable . . . without any defense, offset or counterclaim whatsoever." By acknowledging the enforceability of its debt under the third note in exchange for additional consideration, Heavy Haul waived any

ability to challenge the debt's enforceability based on CCG's alleged failure to distribute loan proceeds in accordance with the third note's terms. And CCG was not required to submit additional evidence showing it distributed loan proceeds in accordance with the third note before being entitled to enforce the acknowledged debt.

We also note that the trial court sustained CCG's objections to the only summary judgment evidence arguably capable of raising a fact issue as to whether CCG failed to perform its obligation to distribute loan proceeds under the third note—paragraphs 14 and 16 of Ms. Telford's affidavit. The Heavy Haul parties devote significant portions of their appellate briefing to challenging the trial court's rulings in that regard, but they have not preserved the issue for our review. Our precedent dictates that "[w]hen a party fails to object to the trial court's ruling that sustains an objection to [its] summary judgment evidence, [the party] has not preserved the right to complain on appeal about the trial court's ruling." *Beinar v. Deegan*, 432 S.W.3d 398, 402 (Tex. App.—Dallas 2014, no pet.). Our review of the appellate record reveals no such objection. The trial court did not err by granting CCG's motion for summary judgment.

THE TRIAL COURT'S FEE AWARD WAS AN ABUSE OF DISCRETION

CCG cross appeals the trial court's decision to award only $33,429.55 in attorney's fees—nearly 90% less than the $310,122.75 CCG contends it incurred in connection with the case—as well as its decision to deny conditional appellate fees.

We review a trial court's fee award for abuse of discretion, *Great Am. Lloyds Ins. Co. v. Vines-Herrin Custom Homes, L.L.C.*, 596 S.W.3d 370, 374 (Tex. App.—Dallas 2020, pet. denied), and will reverse only if its ruling is arbitrary, unreasonable, or without regard to guiding legal principles. *Bocuet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). When a trial court does not specify the basis for its attorney's fee award, we will uphold its ruling on any basis supported by the evidence. *See Iola Barker v. Hurst*, 632 S.W.3d 175, 186 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *see also M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017) (when no findings of fact or conclusions of law filed or requested, we imply all findings necessary to support judgment if supported by the evidence).

"A party who prevails in a lawsuit is entitled to recover attorney's fees only if permitted by statute or contract." *Med. City. Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 58 (Tex. 2008). Here, the Heavy Haul parties contractually agreed to pay CCG's attorney's fees in connection with collecting the balances owed under the notes. Moreover, a fee award, including conditional appellate fees, is required by statute because CCG prevailed in its suit for breach of contract. *See* TEX. CIV. PRAC. & REM. CODE § 38.001; *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015); *Recognition Commc'ns, Inc. v. Am. Auto. Ass'n*, 154 S.W.3d 878, 891 (Tex. App.—Dallas 2005, pet. denied).

As the party seeking to recover its fees, CCG had the burden to prove that its fees were both reasonable and necessary. *Rohrmoos Venture v. UTSW DVA*

*Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). In determining whether fees are reasonable and necessary, courts generally consider the eight familiar *Arthur Andersen* factors:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (cleaned up).

The supreme court has also instructed that the "lodestar method" applies in "any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *See Rohrmoos*, 578 S.W.3d at 498. The first step under this method is "determining the reasonable hours worked multiplied by a reasonable hourly rate" to arrive at the "base lodestar," which "should approximate

the reasonable value of legal services provided in prosecuting or defending the prevailing party's claim through the litigation process." *Id.*

The party seeking to recover its fees bears the burden of providing sufficient evidence of both the reasonable hours worked and the reasonable hourly rate, providing at a minimum, "evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* Although contemporaneous billing records are not required, they "are *strongly* encouraged." *Id.* at 502.

The "base lodestar figure accounts for most of the relevant *Arthur Andersen* considerations." *Id.* at 500. And there is a strong presumption that the base lodestar figure provides the reasonable value of attorney's fees. *Id.* at 502. Nevertheless, a court may adjust the base lodestar figure under the second step of the lodestar method if *Arthur Andersen* factors not accounted for in the first step establish an unreasonably low or high fee. *Id.* at 501. The party seeking such an adjustment must provide "specific evidence" overcoming the presumptive reasonableness of the base lodestar figure. *Id.* at 501.

Here, CCG provided sufficient evidence to support its base lodestar, which included attorney testimony—both live and through affidavit—as well as contemporaneous billing records. CCG's attorney expert addressed the relevant

*Arthur Andersen* factors, testified to the rates charged by the attorneys who worked on the case, testified that those rates were reasonable and in line with those charged by similar firms within the community, opined that the fees incurred were reasonable and necessary under the circumstances and in light of the results achieved, explained the contemporaneous billing records documenting attorney time spent on the case, and segregated the fees incurred as follows: $78,489.90 related to the rule 91a motion to dismiss Heavy Hall's claims; $87,353.85 related to the mandamus proceedings; $127,167.75 related to CCG's case-in-chief; $12,202.20 related to a draft motion to dismiss and for sanctions based on claims Heavy Haul asserted after the mandamus but ultimately abandoned after receiving a copy of the draft motion; and $4,909.05 related to a motion seeking to strike a jury trial designation based on contractual jury waiver.

CCG's attorney expert also provided affidavit testimony estimating the amount of reasonable and necessary attorney time that would be required to address various potential post-judgment proceedings, and he opined as to what he would consider a reasonable hourly rate for attorney work in those proceedings. CCG thus requested conditional attorney's fees in the event of such post-judgment proceedings based on its expert's estimates. *See, e.g.*, *Apple Tex. Restaurants, Inc. v. Shops Dunhill Ratel, LLC*, 2022 WL 883907, at *6 (Tex. App.—Dallas March 25, 2022, pet. denied) (mem. op.) (citing *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020)).

The Heavy Haul parties offered no "specific evidence" to overcome the presumption that CCG's base lodestar calculation was reasonable. *See Rohrmoos*, 578 S.W.3d at 501. Instead, they relied solely on attorney argument and their cross-examination of CCG's expert, which largely focused on the expert's methodology in segregating tasks and the extent to which CCG sought to recover fees for drafting motions that ultimately were either not filed or not granted.

On appeal, the Heavy Haul parties argue, as they did in the trial court, that fee awards under rule 91a are discretionary, and the trial court thus had discretion to deny all fees related to CCG's rule 91a motion and the resulting mandamus proceedings. We disagree. The fact that the trial court may have had discretion to deny fees if sought under rule 91a at an earlier stage of the litigation does not mean it has discretion to deny those fees post-judgment to a prevailing party entitled to fee shifting under the terms of the parties' contract. Regardless, even if the trial court had denied all fees related to the rule 91a motion and mandamus proceedings as being either unreasonable or unnecessary, it would not explain the trial court's awarding only $33,429.55 of the remaining $144,279.00 CCG's expert testified were incurred on other matters.

We likewise reject the Heavy Haul parties' assertion that redactions in CCG's billing records made it impossible to determine whether certain time entries involved reasonable and necessary tasks. CCG's expert testified that his lodestar calculation did not include fees for billing entries that were completely redacted. And to the

extent partial redactions made it difficult to determine the subject of a small portion of the remaining time entries, that would not explain or justify the drastic fee reduction applied by the trial court.

We are mindful that even if a fee claimant's evidence is uncontroverted, a trial court is not required to award the full amount requested. *See Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547–48 (Tex. 2009) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)). Indeed, "the trial court is entitled to examine the entire record and to view the matter in light of the amount in controversy, the nature of the case, and his or her personal experience as a lawyer or judge." *Iola Barker*, 632 S.W.3d at 193. Moreover, the trial court may have been within its discretion to take "judicial notice of the usual and customary fees" in the jurisdiction and determine that the hourly rates charged by CCG's attorneys were unreasonably high for purposes of shifting fees to an opponent. *See Scott Pelley P.C. v. Wynne*, 578 S.W.3d 694, 705 (Tex. App.—Dallas 2019, no pet.) ("[I]n the absence of other evidence supporting an attorney's fee award, the reviewing court will presume that the trial court took judicial notice of the usual and customary fees . . . ."). But that still would not justify the almost 90% reduction applied by the trial court here.

On this record, the trial court's fee award was an abuse of discretion because it bears no discernable relationship to the uncontroverted evidence of CCG's attorney's fees incurred to collect the balance due under the notes. *See Iola Barker*,

–15–

632 S.W.3d at 193 (reversing fee award where the record did not justify 83% fee reduction); *see also, e.g.*, *Fiamma Statler, LP v. Challis*, No. at *18 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem. op.) (abuse of discretion where 95% fee reduction was against the great weight and preponderance of the evidence); *Urquhart v. Calkins*, No. 01-17-00256-CV at *4 (Tex. App.—Houston [1st Dist.] July 10, 2018, pet. denied) (mem. op.) (abuse of discretion where the record did not justify 92% fee reduction).

We affirm the trial court's summary judgment, reverse its fee award, and remand for a redetermination of CCG's attorney's fees consistent with this opinion. Because the trial court did not award conditional appellate fees, and in light of our disposition, the trial court on remand should consider any legally sufficient evidence CCG produces concerning the attorney's fees it incurred in this appeal. It should also award conditional appellate attorney's fees if CCG submits legally sufficient evidence of the reasonable and necessary fees it expects to incur in the event of any further appeals in this case.

221263f.p05

/Cory L. Carlyle/.
CORY L. CARLYLE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

XS HEAVY HAUL, INC. AND JIM
AND NANCY ELISE TELFORD,
Appellants

No. 05-22-01263-CV     V.

COMMERCIAL CREDIT GROUP,
INC., TEXHOMA COMMERCIAL
TITLES, LLC, AND ARTHUR
CASTANON, Appellees

On Appeal from the 429th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 429-05562-
2020.
Opinion delivered by Justice Carlyle.
Chief Justice Burns and Justice
Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding Commercial Credit Group, Inc. $33,429.55 in attorney's fees. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellees COMMERCIAL CREDIT GROUP, INC., TEXHOMA COMMERCIAL TITLES, LLC, AND ARTHUR CASTANON recover their costs of this appeal from appellants XS HEAVY HAUL, INC. AND JIM AND NANCY ELISE TELFORD.

Judgment entered this 27th day of November, 2023.